# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**RICHARD H. JOHNSON,**
      **Plaintiff,**

    v.                                                                     Case No. 19-C-645

**DILIP TANNAN,** *et al.*,
      **Defendants.**

## ORDER

Plaintiff Richard Johnson, a former Wisconsin state prisoner who is representing himself, filed this lawsuit under 42 U.S.C. § 1983. He is proceeding on a deliberate-indifference claim against defendants Dilip Tannan and Victoria Champeau based on his allegations that they discontinued his Continuous Positive Airway Pressure (CPAP) machine despite knowing that he could not properly breathe at night without it. Before me now are the parties' cross motions for summary judgment.

### I. BACKGROUND

The plaintiff was incarcerated at Oshkosh Correctional Institution, where both defendants worked. Defendant Dr. Tannan worked there as a physician, and defendant Champeau worked there as a nurse. In his position, Dr. Tannan attends to the medical needs of inmates, including diagnosing and treating illnesses and injuries and arranging for outside professional consultation when warranted. In her position, Champeau assesses and treats patients, assists physicians in providing medical services, manages inmates' medications, provides emergency care, and maintains medical records.

The plaintiff transferred to Oshkosh on January 31, 2018, with a diagnosis of sleep apnea. He was already using a CPAP machine. CPAP machines are designed to help

people who have breathing difficulties while they are sleeping. To treat spontaneous pauses in breathing associated with sleep apnea, a CPAP machine sends a constant flow of airway pressure to the throat to ensure the airway stays open. Advanced care providers notify a nurse or respiratory therapist when they approve an inmate for Positive Airway Pressure (PAP) therapy. Nurses are not authorized to order PAP therapy. After an inmate is approved for PAP therapy, health services staff meet with the inmate to fit him with the correct mask. Nurses are not authorized to order or discontinue CPAP equipment without an advance care provider's order.

On the day the plaintiff transferred to Oshkosh, he informed health services that his CPAP mask was leaking into his eyes because the medium-sized mask was too big for his face. The plaintiff explains that none of the masks fit his face. Health services placed an order for a size small mask. A couple of days later, on February 2, 2018, Dr. Tannan placed an order for the plaintiff to have a low bunk to accommodate his use of a CPAP machine. A couple of weeks after that, on February 18, the plaintiff exchanged his size medium mask for a new size small mask.

Inmates at Oshkosh who have medical concerns or wish to communicate with medical staff submit a health services request to the health services unit. Nurses triage all health service requests and respond within twenty-four hours. On July 2, 2018, about five months after transferring to Oshkosh, the plaintiff filed a health services request for CPAP filters, new hoses, and a newer model mask. He explained that "[his] mask leaks and it's a mask [he] previously had problems with." ECF No. 25-1 at 27. About a week later, on July 9, the plaintiff had an appointment in health services, during which he explained that his mask was too small and leaks air. The plaintiff was fit for a different

2

brand of CPAP mask, and Champeau ordered a new mask in size medium. The plaintiff reported to health services a little more than a week later and exchanged his mask for the new mask.

About four months later, on October 31, 2018, Dr. Tannan evaluated the plaintiff in health services for a sore throat; the plaintiff tested positive for strep throat. As part of his treatment, the plaintiff stayed in health services for twenty-four hours on observation. At no time did the plaintiff mention to Dr. Tannan that he was having issues with his CPAP machine or that he had any concerns about his sleep apnea.

On February 7, 2019, a little more than six months after the plaintiff had received his second replacement mask, Champeau evaluated whether the plaintiff's CPAP machine usage was compliant with the institution's usage requirements. For CPAP machine users to be deemed adherent to therapy, they must use their machine 70% of the time for a minimum of four hours. That is about eighty-four hours per month. The purpose behind the compliance policy is to ensure that the institution's CPAP machines are distributed to inmates who will actually use them, and to prevent inmates from using the equipment for improper purposes. Dr. Tannan explains that advance care providers may discontinue therapy if an inmate fails to adhere to the therapy.

Champeau explains that random compliance checks on CPAP machine users are done by the respiratory therapist who periodically runs reports on groups of users. Providers review an inmate's chart to determine his historical compliance with the usage requirements. Providers review current and prior compliance reports. If a provider decides to discontinue an inmate's CPAP machine based on non-compliance with usage requirements, the provider informs the nurse, who then informs the inmate.

Champeau asserts that the plaintiff's compliance report for the period of October 29, 2018 through December 27, 2018, showed that he used his CPAP machine three out of sixty days, which equates to a 5% usage rate. The plaintiff's compliance report for the period of July 22, 2018 through August 20, 2018, showed that he used his CPAP machine nine out of thirty days, which equates to a 30% usage rate. Following her review of these reports, Champeau informed Dr. Tannan that the plaintiff's CPAP usage did not meet the usage requirements.

Dr. Tannan reviewed the relevant information and gave Champeau a verbal order to discontinue the plaintiff's CPAP machine due to non-compliance. Dr. Tannan explains that, at no time prior to his decision to cancel the plaintiff's CPAP machine, was he ever informed that the plaintiff was not using his machine because the CPAP mask did not fit properly or that it was leaking.

The plaintiff was called to health services on February 7, 2019. Champeau informed the plaintiff that Dr. Tannan was discontinuing his use of the CPAP machine based on his failure to use the machine as required. The plaintiff asserts that he told Champeau he had his own personal CPAP machine in property. Champeau does not recall the plaintiff telling her that, and she did not indicate in his medical records that he told her that. The plaintiff also asserts that he told Champeau that he had not been using his CPAP machine because the mask did not fit well and it leaked. ECF No. 37 at ¶ 5.

The next day, health services received a health services request from the plaintiff asking Dr. Tannan if he had given Champeau permission to take his CPAP machine. He also explained that he had brought a CPAP machine from home. This was the first and only health service request that the plaintiff had submitted about his CPAP machine/mask

4

since July 2018, when he had received his second replacement mask. The plaintiff explains that, although he had not filed a health services request, he had been asking prison officials to call health services to let staff know his mask did not fit and was leaking. ECF No. 37 at ¶ 6. According to the plaintiff, prison officials (he does not specify who) told him that health services was aware of his issues. *Id.* at ¶ 7.

The nurse who responded to the plaintiff's health services request explained that Dr. Tannan discontinued the CPAP machine because the plaintiff was not compliant with the institution's usage requirements and that he could discuss Dr. Tannan's decision with him at his next appointment. Champeau asserts that she did not review the plaintiff's February 8 health services request. There is no record of the plaintiff asking to meet with Dr. Tannan before his next scheduled appointment to discuss his concerns.

About two and a half months later, on April 25, 2019, Dr. Tannan examined the plaintiff. The plaintiff asked Dr. Tannan to reconsider letting him have a CPAP machine. Dr. Tannan agreed and placed a new order for a CPAP machine. The plaintiff received his new machine a little more than a week later.

## II. ANALYSIS

A party is entitled to summary judgment if it shows that there is no genuine dispute as to any material fact and it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). To survive a motion for summary judgment, a non-moving party must show that sufficient evidence exists to allow a jury to return a verdict in its favor. *Brummett v. Sinclair Broad. Grp., Inc.*, 414 F.3d 686, 692 (7th Cir. 2005). For the purposes of deciding the defendants' motion, I resolve all factual disputes and make all reasonable factual

inferences in favor of the plaintiff, who is the non-moving party. *Springer v. Durflinger*, 518 F.3d 479, 483-84 (7th Cir. 2008).

"[T]he Eighth Amendment, as the Supreme Court has interpreted it, protects prisoners from prison conditions that cause the wanton and unnecessary infliction of pain, including . . . grossly inadequate medical care." *Gabb v. Wexford Health Sources, Inc.*, 945 F.3d 1027, 1033 (7th Cir. 2019) (quoting *Pyles v. Fahim*, 771 F.3d 403, 408 (7th Cir. 2014)) (internal quotations omitted). The court uses a two-part test to evaluate whether medical care amounts to cruel and unusual punishment; it asks: 1) "whether a plaintiff suffered from an objectively serious medical condition" and 2) "whether the individual defendant was deliberately indifferent to that condition." *Id.* (quoting *Petties v. Carter*, 836 F.3d 722, 727-28 (7th Cir. 2016) (en banc)).

"A prison official is deliberately indifferent only if he 'knows of and disregards an excessive risk to inmate health or safety.'" *Whiting v. Wexford Health Sources,* 839 F.3d 658, 662 (7th Cir. 2016) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). The Seventh Circuit has explained that "[t]he state-of-mind element is measured subjectively: The defendant must know of facts from which he could infer that a substantial risk of serious harm exists, and he must actually draw the inference." *Id.* (citations omitted).

The defendants argue that they are entitled to summary judgment because the plaintiff cannot create a triable issue of fact on either prong. They concede that sleep apnea *can* be an objectively serious medical condition; however, they argue that the plaintiff cannot establish that *his* sleep apnea was sufficiently serious enough to satisfy the first prong of the standard. The plaintiff asserts that "without [his] CPAP machine he [could] die in [his] sleep," but he offers no evidence from which a jury could reasonably

6

reach that conclusion. The plaintiff points to a handful of medical records that show he was, at some unknown point, diagnosed with sleep apnea and was prescribed a CPAP machine, but there is no discussion in those records about the severity of his condition.

Regardless, even assuming a jury could reasonably conclude that the plaintiff's sleep apnea was objectively serious, it could not also reasonably conclude that the defendants were deliberately indifferent to the risk that the condition posed to him. When the plaintiff arrived at Oshkosh, his concerns about an ill-fitting mask were immediately addressed. When he raised concerns months later about his replacement mask, those concerns were also immediately addressed.

Despite health service's prompt responses, the plaintiff never raised any issues about his second replacement mask or his machine to anyone at health services until the day Champeau told him that Dr. Tannan was discontinuing his machine. The plaintiff asserts that he told prison staff to tell health services that his mask did not fit properly, but he offers no proof from which a jury could conclude that his message reached Champeau or Dr. Tannan. Thus, when Dr. Tannan made his decision to discontinue the plaintiff's machine, all he knew was that the plaintiff had, of his own accord and for no apparent reason, nearly stopped using the machine and had raised no concerns about his sleep apnea. Based on these facts, a reasonable jury could not conclude that Dr. Tannan knew that his decision to discontinue the plaintiff's CPAP machine would expose the plaintiff to a substantial risk of serious harm. He was simply taking back a machine that the plaintiff had, on his own, stopped using.

The plaintiff asserts that, when Champeau informed him of Dr. Tannan's decision, he told her that the reason he had not been using the machine was because his mask did

7

not fit. The Seventh Circuit has repeatedly held that staff are neither required nor expected to believe everything inmates tell them. *Olson v. Morgan*, 750 F.3d 708, 713 (7th Cir. 2014). Champeau knew that the plaintiff had complained to health services in the past when his mask did not fit, yet he had not raised any complaints since he had received his second replacement mask. It is no wonder that his explanation for not using the machine rang hollow. In any event, she, like Dr. Tannan, knew that the plaintiff rarely used his machine and had raised no concerns to health services about his sleep apnea. Thus, a jury could not reasonably conclude that Nurse Champeau knew that Dr. Tannan's decision to discontinue the CPAP machine would expose the plaintiff to a serious risk of harm. Both defendants are entitled to summary judgment.

### III. CONCLUSION

For the reasons stated, **IT IS ORDERED** that the plaintiff's motion for summary judgment (ECF No. 35) is **DENIED**.

**IT IS FURTHER ORDERED** that the defendants' motion for summary judgment (ECF No. 22) is **GRANTED.**

**IT IS FURTHER ORDERED** that this case is **DISMISSED.** The clerk's office shall enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within 30 days of the entry of judgment. *See* Federal Rule of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Federal Rule of Appellate Procedure 4(a)(5)(A).

Under limited circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within 28 days of the entry of judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin, this 7th day of April, 2020.

s/Lynn Adelman
LYNN ADELMAN
United States District Judge